UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

JOHN T. MCGRATH     PLAINTIFF

VERSUS     CIVIL ACTION NO. 1:20-CV-237-RPM

LESTER TRAUTH et al     DEFENDANTS

**MEMORANDUM OPINION & ORDER**

Plaintiff John T. McGrath, proceeding *pro se* and *in forma pauperis*, filed a 42 U.S.C. § 1983 prisoner civil rights complaint alleging that he was denied commissary privileges at the Jackson County Adult Detention Center (JCADC). In his complaint, Plaintiff also alleged he is being discriminated against based on an incident related to the canteen or commissary services offered at the facility through Aramark. He alleged that on one occasion he paid for commissary items, but the "Aramark worker" (later identified as Defendant Lester Trauth) would not bring him the purchased items. According to Plaintiff, Trauth told him, "I really hate people from Louisiana with tattoos on their face."

In a later response to Court order, Plaintiff alleged that he notified Defendants Trauth and Jessica Pleasant about the commissary issue on June 27, 2020. Doc. [11]. He contends that Defendants Trauth and Pleasant violated his constitutional rights by later placing him on commissary restrictions on July 3, 2020. Plaintiff also alleged that he notified Jackson County Sheriff Mike Ezell and Captain Tyrone Nelson about being placed on commissary restrictions.

On August 5, 2021, the Court conducted a screening hearing. *See* Doc. [55-1]. At the hearing, Plaintiff testified that he did not receive candy, coffee, honeybuns, chips, and noodles which he had ordered and paid for through the commissary. After Plaintiff complained about not receiving these items, Trauth placed Plaintiff on commissary restrictions, which remained in

place until Plaintiff was transferred to Mississippi Department of Corrections' (MDOC) custody approximately two months later. According to Plaintiff, Trauth was not authorized to place him on restrictions, but Trauth went into the Aramark computer system and blocked Plaintiff's access. On another occasion, Trauth directed an officer at JCADC to remove items from Plaintiff's cell. Plaintiff notified Trauth's supervisor, Jessica Pleasant, about the commissary restrictions but she did nothing to correct the situation. Plaintiff also testified that he told Sheriff Mike Ezell and Captain Nelson about the situation, but they failed to take any remedial actions.

Liberally construed, Plaintiff's complaint alleges the following claims: (1) conversion or theft of money and personal items; (2) denial of commissary privileges; (3) use of abusive language and discrimination; (4) retaliation; (5) failure to resolve grievances satisfactorily; and (6) failure to properly supervise.

Defendants have filed motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Doc. [53] [55] [57]. Plaintiff subsequently filed a barrage of pleadings related to the allegations in his complaint, including a "Statement of Facts" (Doc. [59]), "Rulings of Judgments by Federal Courts" (Doc. [62]), what appears to be a response to the motions to dismiss (Doc. [65]), "Claim for Relief" (Doc. [66]), "Motion for Return of Property and Reimbursement" (Doc. [67]), "Motion for Summary Judgment" (Doc. [68]), and "Declaration Supporting Summary Judgment" (Doc. [70]). Collectively, the Court will construe these pleadings as Plaintiff's response to Defendants' motions to dismiss.

## Law and Analysis

### Standard of Review

In ruling on a Rule 12(b)(6) motion, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches*

*Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quotation marks omitted).  However, "[t]o survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead sufficient facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citation, footnote, and quotation marks omitted).  On that point, the United States Supreme Court has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations and quotation marks omitted).

**"State Actor"**

In their respective motions to dismiss, Defendants Trauth and Pleasant argue that they were not state actors; therefore, Plaintiff has failed to state constitutional claims against them.  It is undisputed that Trauth and Pleasant were employed by Aramark at the time of the incident.  As such, they were employed by a private employer and not by Jackson County or any other state entity.  Aramark has an operating agreement with JCADC to provide commissary items to inmates.  Doc. [55-1] at 35-37.  In his testimony, Plaintiff described Trauth as an "Aramark deliveryman;" and Pleasant is Trauth's supervisor.

To state a cause of action under section 1983, the plaintiff must allege that the person who deprived him of a federal right was acting under color of state law.  *Cinel v. Connick*, 15 F.3d 1338, 1342 (5th Cir. 1994).  The conduct of a private actor will be charged to the state only if one of the following tests is satisfied: (1) if the private entity "performs a function which is

3

traditionally the exclusive province of the state," or (2) if the state "exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the [s]tate," or (3) where the government has "so far insinuated itself into a position of interdependence with the private actor that it was a joint participant in the enterprise." *Bass v. Parkwood Hosp.*, 180 F.3d 234, 242 (5th Cir. 1999) (quotations and alterations omitted). "Under any formula, ... the inquiry into whether private conduct is fairly attributable to the state must be determined based on the circumstances of each case." *Id.*

Generally, independent contractors providing essential food services to jails and prisons have been deemed state actors for purposes of § 1983. *See White v. Wilson*, No. 3:19CV441-HTW-LRA, 2020 WL 5163528, at *3 (S.D.Miss. Aug. 2, 2020) (collecting cases). However, this Court concludes that such liability does not extend to an independent contractor's provision of commissary or canteen services. Numerous other courts similarly have concluded that an independent contractor's provision of commissary or canteen services does not transform a private actor into a state actor for purposes of § 1983 liability.[1] *See Whitehead v. Marcantel*, 766 F.App'x 691, 701 (10th Cir. 2019) (finding lack of subject-matter jurisdiction because "[t]he allegation that Keefe provided commissary services under a contract with MTC does not state a claim that Keefe acted under color of state law."); *Bomer v. Access Catalog Co.*, 75 F.App'x. 382, 383 (6th Cir. 2003) (upholding dismissal for failure to state a claim against vendor selling products to prisoners, because the vendor "was not acting under the color of state law"); *Hill v. CEO of Union Supply Grp.*, No. 21-cv-00104-JST, 2022 WL 19316, at *2 (N.D.Calif. Jan. 3, 2022) (finding "no constitutional obligation to provide inmates with canteen services or supplies"); *Means v. Rockland Cty. Corr. Facility*, No. 18-CV-8290 (CM), 2019 WL 1596489, at

---

[1] Defendants did not cite to any specific cases finding that commissary providers are not deemed state actors; however, through its own research, the Court was able to locate several such cases.

4

*4 (S.D.N.Y. Apr. 15, 2019) (holding that a private commissary contractor at a state correctional facility "is not transformed into a state actor merely by virtue of any contract to provide stamps or other commissary" it has with the state.); *Berrios v. Keefe Commisary Network, LLC*, No. TDC-17-0826, 2018 WL 1123692, *4 (D.Md. Mar. 1, 2018) (granting motion to dismiss because "provider of goods for purchase to Maryland inmates, does not engage in state action"); *Riley v. O'Brien*, No. 16-11064-LTS, 2016 WL 8679258, at *9 (D.Mass. Sept. 16, 2016) ("there is no basis alleged to find that Keefe Corp. is a state actor simply because it has contracted with the Commonwealth of Massachusetts to provide prisoner canteen services."); *Ramziddin v. Monmouth Cty. Sheriff Dep't*, No. 09–4829 (FLW), 2010 WL 1752540, at *7 (D.N.J. Apr. 30, 2010); *Ellison v. Broadus*, No. 1:08-cv-262-HSO-JMR, 2009 WL 837717, at *3 (S.D.Miss. Mar. 26, 2009). Based on the foregoing, the Court finds that Defendants Trauth and Pleasant are not state actors. Thus, Plaintiff has not stated viable § 1983 claims against them.

**Claims against Trauth and Pleasant**

Even assuming arguendo that Trauth and Pleasant were state actors, Plaintiff's central claims against them fail to state a cause of action under § 1983. Although Trauth allegedly denied Plaintiff commissary access for approximately two months, it is well established that an inmate possesses no constitutional right to commissary privileges. *Malchi v. Thaler*, 211 F.3d 953, 958 (5th Cir. 2000); *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997). Moreover, Plaintiff has failed to state a claim for conversion or theft of his commissary items or funds. Intentional deprivations of property, such as those alleged by Plaintiff, do not violate the due process clause of the Fourteenth Amendment if adequate post deprivation remedies exist. *Hudson v. Palmer*, 468 U.S. 517 (1984). This holds equally true for claims of negligent deprivation. *Daniels v. Williams*, 474 U.S. 327 (1986); *Davidson v. Cannon*, 474 U.S. 344

(1986). The Fifth Circuit has held that "Mississippi's post-deprivation remedies for civil IFP litigants satisfy due process." *Nickens v. Melton*, 38 F.3d 183, 185 (5th Cir. 1994).

Plaintiff also alleges that Trauth used abusive language against him because Trauth did not like people from Louisiana who have tattoos on their faces. Although Trauth may have directed abusive or disparaging comments towards McGrath, these isolated comments by Trauth do not rise to the level of a constitutional violation. *See Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002) ("Claims of verbal abuse are not actionable under § 1983 ..."); *Williams v. Bramer*, 180 F.3d 699, 706 (5th Cir.1999); *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997) ("[i]t is clear that verbal abuse by a prison guard does not give rise to a cause of action under § 1983.").

Plaintiff asserts that Trauth discriminated against him. To prevail on an equal-protection claim, Plaintiff must show that a state actor intentionally discriminated against him because of membership in a protected class, or that he was intentionally treated differently from others similarly situated, that the unequal treatment was based on some constitutionally protected interest, and that there is no rational basis for the difference in treatment. *See Gibson v. Tex. Dep't of Insurance*, 700 F.3d 227, 238 (5th Cir. 2012); *Stefanoff v. Hays County*, 154 F.3d 523, 526 (5th Cir. 1998). Plaintiff indicates that other inmates received commissary items, but Trauth denied Plaintiff commissary privileges because of his animus towards Louisiana people with tattooed faces. However, Plaintiff testified repeatedly that Trauth denied him access to commissary privileges because Plaintiff complained about Trauth's handling and/or theft of Plaintiff's canteen account and commissary items. Regardless, Plaintiff does not allege that he is a member of a protected class. Being from Louisiana does not place Plaintiff in a protected

class.[2] His complaint fails to allege that he was treated differently from similarly situated inmates. His later vague and conclusory testimony that other inmates were sold commissary items, but he was not, fails to state a claim under the Equal Protection Clause. *See Clark v. Owens*, 371 F. App'x 553, 554 (5th Cir. 2010) ("[C]onclusory assertions that [a plaintiff] was treated differently than other similarly situated [persons] are insufficient to state an equal protection claim."); *Propes v. Mays*, 169 F.App'x. 183, 185 (5th Cir. 2006) ("prisoner's vague and conclusory allegations that his equal protection rights have been violated are insufficient to raise an equal protection claim"

**Grievance Investigation and Resolution**

Plaintiff also sued JCADC employees Sheriff Ezell and Captain Nelson. He alleges that Defendants Ezell and Nelson did not properly investigate his complaints about the commissary situation and did not resolve his grievance satisfactorily. Plaintiff does not contend that Ezell or Nelson played any direct role in the denial of commissary privileges. He simply asserts that when informed of the situation, they did nothing to resolve the issue. There is no constitutional right to have a grievance resolved to one's satisfaction. *See Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005) (per curiam). "As [plaintiff] relies on a legally nonexistent interest, any alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless." *Ibid*. Accordingly, Plaintiff has failed to state a claim against Defendants Ezell and Nelson based on their failure to investigate and resolve Plaintiff's grievance.

---

[2] MDOC's website lists McGrath's race as "white." According to Plaintiff, Trauth referred to him as a "Coonass." A brief survey of internet dictionary sites reveals that "Coonass" is a slang term referring to someone of Cajun descent. Apparently, there is division within the Cajun community as to whether the term should be deemed offensive. *See* Zaragovia, Veronica, "The World of Words," *The World* (Oct. 1, 2014 at 7:45 AM) https://theworld.org/stories/2014-10-01/cajuns-are-fiercely-proud-their-culture-theyre-divided-over-word-coonass.

**Plaintiff's Motion for Summary Judgment**

Plaintiff filed a motion for summary judgment on July 13, 2022, wherein he argues that there are no genuine issues of material fact.[3] Doc. [68]. Plaintiff simply re-urges the merits of his complaint without citation to testimony or exhibits. For the first time, he alleges that Trauth had Plaintiff placed in punitive segregation. He made no such claim in his complaint. Nor did he mention punitive segregation at the screening hearing. In fact, Plaintiff testified at the hearing that his complaint addressed solely commissary restrictions and no other types of restrictions. *See* Doc. [55-1] at 38. The Court questions how an "Aramark deliveryman" could place a JCADC inmate in punitive segregation. Nevertheless, the Court declines to consider Plaintiff's claim against Trauth related to administrative segregation because it was not part of his original complaint. As demonstrated above, Plaintiff has failed to state a constitutional claim as to any of the allegations in his complaint. Plaintiff also filed a motion for return of property and reimbursement. Doc. [67]. He merely seeks reimbursement for the commissary items at issue in this lawsuit. Because Plaintiff has not stated a federal constitutional claim, the relief requested cannot be granted by this Court. Accordingly, Defendants' motions to dismiss should be granted; and Plaintiff's motions for summary judgment and for return of property should be denied.

IT IS THEREFORE ORDERED AND ADJUDGED that the [52] Motion to Dismiss filed by Defendants Mike Ezell and Tyrone Nelson is GRANTED, and that the [54] [56] Motions to Dismiss filed by Defendants Lester Trauth and Jessica Pleasant are GRANTED. Plaintiff's 42 U.S.C. § 1983 civil rights complaint is dismissed with prejudice as to all claims and all defendants.

---

[3] The Court set a dispositive motions deadline of October 15, 2021. Doc. [51]. Under the current scheduling order, Plaintiff's motion for summary judgment is late by approximately nine months.

IT IS FURTHER ORDERED that Plaintiff's [68] Motion for Summary Judgment is DENIED, and that Plaintiff's [67] Motion for Return of Property is DENIED.

SO ORDERED AND ADJUDGED, this the 20th day of September 2022.

/s/ *Robert P. Myers, Jr.*
ROBERT P. MYERS, JR.
UNITED STATES MAGISTRATE JUDGE